UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,         CRIMINAL NO. 11-20531

                Plaintiff,         HON. VICTORIA A. ROBERTS

-vs-

D-1 **WILLIAM MORGAN**,

                Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

William Morgan's greed and self-interest blinded him to the needs of the people of Royal Oak Township, who entrusted him with the welfare of their community. Although he held the highest elected position in Royal Oak Township, he cared little for the conditions of the neighborhoods of the people who elected him to that position. Royal Oak Township received federal money[1] to take care of some of the blight that causes so much damage to struggling communities like Royal Oak Township. Totally disregarding his responsibility as a public servant to ensure that the funds were used effectively to improve neighborhoods, Morgan sold his services for $11,150.

**Not an Isolated Incident**

In his sentencing memorandum, defendant erroneously states:

Mr. Morgan is held accountable for conspiring to make a false claim, and

---

[1] These funds were to be used under the Neighborhood Stabilization Program [NSP] for projects such as the demolition of dilapidated buildings. In addition to serving as the Township Supervisor, Morgan was the NSP co-ordinator for the Township and dealt directly with Oakland County officials, who administered the NSP funds.

>accepting a bribe in the amount of $1,500.00 as a public official.  Both charges stemming from a **single incident**, are not of a violent nature. . . .
>
>It is an **isolated incident**.

(Defendant's Sentencing Memorandum. page 6.)

Defendant's convictions of conspiracy to commit three crimes was not a "single" or "isolated" incident.  His criminal conduct spanned several months, in which he asked for, and received, three separate bribes totaling $11,500.

The first bribe took place in August 2009, when Terrance Parker, one of the co-conspirators, attempted to get the demolition contract funded by the Neighborhood Stabilization Act.  Morgan told Parker that, as township supervisor, he would make a concentrated effort to have the contract awarded to Parker's company if he received "insurance."  Consequently, on August 24, 2009, Parker wire-transferred a $10,000 bribe to Morgan.

Despite Morgan's vigorous efforts to steer the contract to Parker's company, the Township Board of Supervisors, over Morgan's dissent, awarded the contract to the lowest bidder, Berkshire Development.  Morgan even refused to sign the contract as the NSP coordinator.  Therefore, the township clerk and treasurer signed the contract to enable the township to obtain the NSP funds.

Morgan continued to try to help Parker by pressuring the owner of Berkshire to have Parker's company to do the asbestos work at the Duke Theater.  This led to the next chapter in this ongoing crime: Morgan's collaboration with Parker and his partner, Marcus Brown, to submit false change orders to get an additional $169,982 in NSP funds.  If successful, Morgan and his co-conspirators would have significantly depleted the $937,101.49, which

was the NSP allocation for Royal Oak Township.  In so doing, Morgan would have taken away the ability of the township to have more dilapidated structures demolished.  Morgan, as NSP co-ordinator, played a critical role in this fraud.  He worked closely with the Oakland County administrator and submitted the fraudulent change order.

Fortunately, the owner of Berkshire had become concerned and had reported the scheme to the F.B.I.  Because the scheme involved the removal of asbestos, an environmental risk was also created.  Agents from the F.B.I.,  H.U.D. Office of Inspector General, and the U.S. Environmental Division, Criminal Investigation Division began an investigation.  Among other things, the Berkshire owner participated in many consensually recorded telephone calls and face-to-face conversations.  In this way, the agents were able to understand the crimes as they progressed over time.  The many conversations involving Morgan, in which he discussed the scheme with the Berkshire owner, as well as the other co-conspirators on three-way calls, refute any notion that Morgan's crime was a brief episode where he was acting out of character.

While the fraud was evolving, Morgan requested and received cash from the Berkshire owner on two occasions.  On March 12, 2010, Morgan asked for, and received, $500 in cash from the Berkshire owner.  On March 16, Morgan delivered the false change order to the Oakland County NSP Administrator. Following are excerpts from a telephone call on March 23 and a meeting on March 26, when the Berkshire owner gave Morgan $1,000.  It is clear from the conversations that Morgan was expecting even more cash once the change order went through.  That is demonstrated by the following exchanges:

| March 23 telephone conversation ||
|---|---|
| Morgan: | Okay, so anyway, did you get a little bit of money or no? |
| Berkshire Owner: | Yeah, yeah, how much do you need? |
| Morgan: | I don't know, about seven million, but what should I narrow it down to? (laughing) |
| Berkshire Owner: | Seven or eight million buddy, I, I think I'd be living on an island and staying away from the maddening world. |
| *    *    * ||
| Morgan: | Yeah, that's what I'm saying.  I'm waiting on them to call me. If they do it today because I'm on my way to the [unintelligible] meeting.  It should be an hour or [unintelligible].  But I mean, what can you handle? |
| Berkshire Owner: | Ah, whatever you want, what do you need?  Don't kill me. |
| Morgan: | (Laughing) You know, I, I hate to pick the numbers like that.  I like for you to do it because I ain't got [unintelligible] right now. |
| Berkshire Owner: | Alright, well, you know, let me, I didn't get that much, I'm gonna be up front, I got way less than $10,000 bucks out of him, but enough to keep us going for about a week and a half, two weeks. |
| Morgan: | Okay, can I have a couple of them or? |
| Berkshire Owner: | I'll try.  A couple, a couple hundred, a couple thousand? |
| Morgan: | A couple thousand. |
| Berkshire Owner: | Let me look at it and see… shoot… Well that might be too steep for me Bill because I. |
| Morgan: | Okay, well. |
| Berkshire Owner: | I want to, I want to get the land fill off my ass right now. |
| Morgan: | Okay, well one would be great. |

| March 26 meeting | |
|---|---|
| [The Berkshire owner had just given Morgan $1,000 in cash.] | |
| **Berkshire Owner:** | **You got a thousand?** |
| **Morgan:** | **Yeah.** |
| **Berkshire Owner:** | **Alright, well whatever you feel comfortable with.  If you need the thousand, keep it.  If you want to be gracious and kick back a few bucks, I'll take it too.  It's up to you.** |
| **Morgan:** | **This would help me.  <u>Help me on my end to do what I got to do.</u>  I appreciate it.  And like I said, you know, a <u>few grand</u>.  I'm not looking for no twenty, thirty thousand.  You know, when we, we did twenty-five, I'm not even looking for that.  <u>Four or five</u> …, I'm good because I know that you the one way out on a limb.  You're ass big time.  So don't worry about me.  You know, hey Bill, I, you know, a little something, let me, you know, let me know.** |
| *    *    * | |
| **Morgan:** | **<u>I got to get [the county administrator]  to get some money in your goddamn hands</u>.  I'm really disappointed.  He didn't call me back.  I called him.  See, I called him to have him check the county.  I'm not going to call the county.  Or you can because its money that's coming to you.** |

From these brief exchanges it becomes clear that Morgan was cagey, feeling out the Berkshire owner to get as much money for himself he could at that time, with the expectation of more pay-offs when the additional NSP funds came in.   Because Morgan believed that the Berkshire owner was a collaborator in the scheme, he was bold enough to keep upping the bribe amounts.

This was the last chapter in the criminal saga that lasted more than seven months and would have continued if the scheme had fallen into place.  In addition to attempting to steal substantial federal funds that would have benefitted the people living in Royal Oak Township, Morgan eroded the trust that citizens should have in the public officials whom they

elect.  This was not a trivial, isolated violation, as suggested in defendant's sentencing memorandum.  The criminal conduct of the defendant was egregious, deliberate, and ongoing.  Having severely damaged the public trust and having shown himself to be a corrupt public official, William Morgan should be sentenced accordingly.

                                        Respectfully submitted,

                                        s/   Robert P. Cares
                                        **ROBERT P. CARES** (P28888)
                                        211 W. Fort
                                        Detroit, MI 48226
                                        (313) 226-9736
                                        robert.cares@usdoj.gov

Dated: July 19, 2012

## CERTIFICATE OF SERVICE

       I hereby certify that on July 18, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

   Amer Hakim

                                                        s/ Robert Cares
                                                        ROBERT CARES
                                                        Assistant United States Attorney
                                                        211 W. Fort Street, Suite 2001
                                                        Detroit, MI  48226
                                                        Phone:  (313) 226-9736
                                                        E-Mail: robert.cares@usdoj.gov
                                                        Bar No. P28888